

# EXPERT VALUATION REPORT

## ON

## #31 Lots Within Ginn Sur Mer Development, West End, Grand Bahama, The Commonwealth of The Bahamas

### PREPARED BY

## Rosemary S Nicholls BSc (Hons) MRICS Registered Valuer
## BCQS INTERNATIONAL



| Contents | | Page |
|---|---|---|
| 1.0 | Introduction | 3 |
| 2.0 | Instructions | 3 |
| 3.0 | Structure of This Report | 3 |
| 4.0 | Involvement | 4 |
| 5.0 | Qualification and Experience | 4 |
| 6.0 | Documents Considered | 4 |
| 7.0 | Inspection | 4 |
| 8.0 | Standard Conditions, Assumptions and The Definition of Market Value | 5 |
| 9.0 | Description | 5 |
| | 9.1   Location and Amenities | |
| | 9.2   Situation | |
| | 9.3   Lot Descriptions | |
| | 9.4   Status of Services & Amenities | |
| | 9.5   Planning & Other | |
| | 9.6   Tenure | |
| 10.0 | Valuation Considerations | 11 |
| 11.0 | Valuation Approach | 12 |
| 12.0 | My Conclusion | 16 |
| 13.0 | Declaration | 17 |
| 14.0 | Fee | 18 |
| 15.0 | Statement of Truth | 18 |

| Appendix 1 | - | Qualifications and Experience |
| Appendix 2 | - | Standard Conditions, Assumption & Definition of Market Value |
| Appendix 3 | - | Map |
| Appendix 4 | - | Photographs |
| Appendix 5 | - | Lot Subdivision Plan |



1.    **INTRODUCTION**

   1.1    This matter concerns the valuation of the individual fee simple interest in #31 (thirty one) individual lots within the Ginn Sur Mer development, West End, Grand Bahama, The Commonwealth of the Bahamas (the "**Property**").

2.    **INSTRUCTIONS**

   2.1    I have been retained by Ballard Spahr LLP and Morris, Manning & Martin, LLP as an independent valuation expert, as to the Market Value of the freehold interest in the Property. I reserve the right to revise and supplement my analysis, opinions, and report to the extent I receive additional relevant information

   2.2    No Special Assumptions have been assumed for the purposes of this report. In this instance, I have assumed a sale within a 12 - 18 month marketing period. I have given consideration to the nature of the subject property including the uncertainty regarding the future of Ginn Sur Mer and the current economic conditions.

   2.3    For the purposes of this report I have been requested to value the Property for the following date:-

        (i.) 12th May 2016, the date of inspection.

   2.4    My compensation for preparing this report is based on an hourly fee of $250 per hour.

   2.5    No part of my compensation is contingent upon any finding, determination, or other expert opinion offered herein or during testimony or any results of the litigation.

   2.6    A copy of my curriculum vitae, which includes my qualifications, all publications authored in the previous 10 years, and all other cases in the previous four years in which I have testified as an expert at trial or by deposition, is attached as Appendix 1.

3.    **STRUCTURE OF THIS REPORT**

   3.1    This report is divided into four sections:

        3.1.1    Section A – General Matters

        3.1.2    Section B – Factual Matters

        3.1.3    Section C – My Opinion

        3.1.4    Section D – My Conclusions and Declaration



**SECTION A – GENERAL MATTERS**

**4.     INVOLVEMENT**

4.1     There are no matters of which I am aware which lead me to suppose that I have any conflict of interest in accepting these instructions.

**5.     QUALIFICATIONS AND EXPERIENCE**

5.1     I am Rosemary Nicholls BSc (Hons), MRICS, Registered Valuer, Associate Director at BCQS International in Providenciales, Turks and Caicos Islands, and specialise in undertaking the valuation of residential and commercial properties throughout the Caribbean region.  A full note of my qualifications and experience is attached at **Appendix 1.**

**6.     DOCUMENTS CONSIDERED**

6.1     In forming my opinion, I have considered the following:-

(a) Ginn Sur Mer Lot Sale Summary.
(b) Copies of land searches for various comparable properties.
(c) Copies of lot purchase agreements for various comparable properties.
(d) Copy of Ginn Sur Mer Master Declaration relating to Covenant, Conditions and Restrictions and four amendments.
(e) Ownership map with extended key.
(f) Re Plats of 1 – 6a West End Subdivision.
(g) Copy of James Andrews Expert Report and related Declaration and backup.
(h) Copy of Paul K. Lowe Expert Report and related Declaration.
(i) Historical marketing brochure relating to Ginn Sur Mer development.
(j) Fourth Amended Master Complaint.

Other than this information, I have not been provided with any other documentation relating to the property before, during, or after my inspection.

6.2     I have also based my opinions upon my knowledge, experience, education and research. I have also relied upon public record data for comparable sales (where available), surveys for the 31# Lots, a physical inspection of the 31 Lots at the date of inspection (12th May 2016), active real estate listings, and various discussions and correspondence with several established real estate agents/ brokers in Freeport, Grand Bahama.

**7.     INSPECTION**

7.1     I carried out an inspection of the Property on Thursday 12th May 2016. Mr. Derek Gape was in attendance during my inspection and provided a tour of the Property and the general vicinity.

7.2     I inspected each lot and took a series of photographs at the time of my inspection. Further, a general tour of the Ginn Sur Mer development was undertaken including a peripheral tour of several club facilities, the airport, golf course, infrastructure works undertaken to date and various other related improvements.

7.3     The weather on the date of inspection was cloudy but dry.



7.4     As a result of my inspection, I believe that I have a clear understanding of the Property subject to this valuation.

## 8.     STANDARD CONDITIONS, ASSUMPTIONS AND THE DEFINITION OF MARKET VALUE

8.1     This information is at **Appendix 2**.

## SECTION B – FACTUAL MATTERS

## 9.     DESCRIPTION

9.1     Location and Amenities

9.1.1     The subject Property is located in Grand Bahama which forms part of the northernmost limits of the Bahamas island chain. Grand Bahama lies approximately 55 miles east of the south Florida coastline. Despite Grand Bahama forming one of the physically larger islands in the Bahamas, accounting for some 530 square miles, the country's capital of Nassau is located on the most populated island of New Providence, some 125 miles or so to the south east.

9.1.2     The subject Property is located in the West End registered subdivision which is located to the western limits of the island and accessed off the west of Warren J Levarity Highway which forms the main arterial road to this part of the island.

9.1.3     The main West End settlement forms a small fishing village and is considered to be one of the administrative centres on the island although the facilities are relatively modest, comprising of a small residential area together with related support services, a government office and a couple of churches.

9.1.4     The Ginn Sur Mer Development site was intended to be developed out by entities affiliated with Bobby Ginn, who had been involved with the development of various other master planned mixed use resort communities predominately based in the USA. The original proposed Ginn Sur Mer development was marketed as a luxury $4.9 billion master-planned development which was to encompass over 2,300 acres of land and would provide #2,000 (two thousand) serviced lots together with various other components. The planned components included a grand canal (with draw bridge) which would connect up the neighbourhoods, 4,400 condominium and hotel units sited in a 18-storey tower anchored around a mega yacht marina with provision for 16# - 250 foot slips plus a further 83 slips over 80 feet in length. Additional planned marinas included three further marinas with up to 676# boat slips, 2# golf courses (Palmer and Nicholas branded design), and extensive other communal and club amenities including a Club House, a private airport with customs facilities, a Monte Carlo-style casino, extensive water and swim pavilions, three beach clubs, Salon and Spa, dry-stack boat facility for 700 boats up to 45-feet, as well as all the necessary infrastructure to support its operation.

9.1.5.     The West End area was historically considered to be the capital of the island, and the future area for tourism. As a result an airport was located here, although when the hotel which previously formed part of the Ginn Sur Mer development site was demolished, the airport closed and became obsolete. The airport and its two runways were refurbished by the Ginn Sur Mer developer and incorporated into the Ginn Sur Mer development. It is now open for day flights on request and



typically caters to private flights and cargo, with the majority of aircraft flying into Grand Bahama International Airport in Freeport some 22 miles to the south east.

9.1.6   The adjacent Old Bahama Bay Hotel and Marina was purchased by the financial partner of the former developer of the Ginn Sur Mer development site as part of a marketing strategy for the large scale expansion and development of the general area. A number of canal lots have been developed with standalone detached homes within the subdivision formed within the Old Bahama Bay Resort and Marina development. There is currently no other large scale tourism development evident in the area.

9.1.7   The subject Property forms #31 (thirty one) lots within Ginn Sur Mer (see map at **Appendix 3**). These lots form a combination of lots which benefit from frontage onto either a white sandy beach, a canal system which has been dredged and the marl used to fill the development areas and an Arnold Palmer designed golf course (with one exception).


9.2   <u>Situation</u>

9.2.1   The subject Property is located within the Ginn Sur Mer development. The subject lots are located off of either Rue de Mer, Marin Court, Chenal Court or Jardin Boulevard and as detailed in the table below:-

| # | Street | Size SF | Size Acres | Frontage | Orientation |
|---|--------|---------|-----------|----------|-------------|
| 33 | Marin Court | 8,379 | 0.19 | 40.03 | Ocean |
| 39 | Marin Court | 8,748 | 0.20 | 40.03 | Ocean |
| 42 | Marin Court | 8,933 | 0.21 | 40.03 | Ocean |
| 43 | Marin Court | 8,954 | 0.21 | 40.02 | Ocean |
| 44 | Marin Court | 8,916 | 0.20 | 40.01 | Ocean |
| 46 | Marin Court | 8,840 | 0.20 | 40.01 | Ocean |
| 67 | Marin Court | 9,040 | 0.21 | 40.20 | Ocean |
| 79 | Marin Court | 8,715 | 0.20 | 41.65 | Ocean |
| 104 | Marin Court | 7,964 | 0.18 | 40.06 | Ocean |
| 108 | Marin Court | 8,321 | 0.19 | 40.06 | Ocean |
| 109 | Marin Court | 8,410 | 0.19 | 40.06 | Ocean |
| 179 | Marin Court | 9,491 | 0.22 | 40.68 | Canal |
| 189 | Marin Court | 5,600 | 0.13 | 40.00 | Canal |
| 203 | Jardin Boulevard | 8,581 | 0.20 | 58.23 | Inland |
| 208 | Rue de Mer Road | 7,400 | 0.17 | 40.00 | Ocean |
| 220 | Rue de Mer Road | 8,053 | 0.18 | 46.94 | Ocean |
| 234 | Rue de Mer Road | 7,400 | 0.17 | 40.00 | Ocean |
| 261 | Rue de Mer Road | 8,331 | 0.19 | 45.17 | Ocean |
| 270 | Rue de Mer Road | 7,714 | 0.18 | 43.37 | Ocean |
| 272 | Rue de Mer Road | 7,400 | 0.17 | 40.00 | Ocean |
| 281 | Rue de Mer Road | 7,400 | 0.17 | 40.00 | Ocean |
| 282 | Rue de Mer Road | 7,400 | 0.17 | 40.00 | Ocean |
| 312 | Rue de Mer Road | 7,720 | 0.18 | 41.35 | Ocean |
| 429 | Rue de Mer Road | 9,728 | 0.22 | 35.35 | Canal |
| 437 | Rue de Mer Road | 16,757 | 0.38 | 60.00 | Canal |
| 448 | Jardin Boulevard | 8,854 | 0.20 | 48.75 | Golf Course |
| 487 | Jardin Boulevard | 8,025 | 0.18 | 50.00 | Golf Course |
| 488 | Jardin Boulevard | 8,025 | 0.18 | 50.00 | Golf Course |
| 493 | Jardin Boulevard | 8,318 | 0.19 | 49.37 | Golf Course |
| 494 | Chenal Court | 10,365 | 0.24 | 50.21 | Canal |
| 498 | Chenal Court | 8,242 | 0.19 | 50.00 | Canal |



9.3     Lot Description

9.3.1   The lots are generally rectangular in shape with frontage generally on either ocean, canal or the golf course of between 40 and 60 feet. There is one inland lot with no frontage onto the ocean, canal or golf course. The topography is generally level and has been filled up to 8 feet above sea/ water level, and as such is somewhat better elevated now than the typically flat and low lying nature of the West End area which has not been subject to some form of development. For the ocean front lots, there is a 100' deep set back which acts as a common area buffer between the lot line and the high water mark where construction is not permitted.

9.3.2   The lots are generally entirely of a marl nature and have no native vegetation growing upon them with the exception of some low lying shrubs and grasses, if at all.

9.3.3   The subject lots form vacant serviced lots which have not been subject to any improvements being sited upon them.

9.3.3   I attach photographs taken at the time of my inspection at **Appendix 4.**

9.4     Status of Services & Amenities

9.4.1   At the time of our inspection, I was advised that the declarant, Resort Holdings (Bahamas) Ltd, is responsible for management of the common areas including the infrastructure which services each lot. There did not appear to be any management personnel on site at the time of our inspection, but the approximate 5 miles of various concrete and brick-paver roads and adjacent footpaths which adjoin the subdivisions appeared to be generally clear and in good condition. The main boulevard and guardhouse have been landscaped and the roadways are lit by solar powered lights.

9.4.2   I am unaware if any fees are currently being charged or collected by Resort Holdings (Bahamas) Limited to offset any related running costs.

9.4.3   The dredging of the manmade canals which were formed as part of Ginn Sur Mer have reportedly been certified by means of a bathymetric survey and records were conveyed as required in close out documents for the lot sales. The lots have been elevated to the 100 year storm floor criteria and raised to a minimum elevation of 10 feet. Further, I have been advised that the dredging, fill, compaction and certification of the lots are at the design elevations and have all been certified by independent engineers.

9.4.4   I have been advised that the lots are serviced by underground utilities and have previously been signed off and certified by independent parties/engineers as part of the close out documents for the lot sales.

9.4.5   The utilities within the former Ginn Sur Mer development are currently only partially operating as there to date appears to have been no demand for utilities as no residences have been completed.

9.4.6   6# (six) houses within Ginn Sur Mer off of Marin Court were partially constructed at the time of our inspection, and within close proximity to a number of the subject lots. Several of these homes were actively under construction and I have been advised that, once completed, home owners will be able to connect to underground electricity and communications following some relatively basic



works.

9.4.7   Power will be provided by Grand Bahama Power Company, although at the time of writing this report, I have been advised that, although underground power lines are available, the final connection to the power grid is not yet complete. Further, I have been advised that all the systems benefit from full backup power i.e. security, reverse osmosis system, golf irrigation etc.

9.4.8   From my experience, the current partial operation of the utilities would not appear to be uncommon during the initial phases of construction for a large scale development of this nature.

9.4.9   I have been advised that there is city water (same as the adjacent Old Bahama Bay Resort) but the onsite water plant is not currently operational due to low water usage. As such at the time of my inspection I was advised that it is currently recommended that any houses which are constructed install their own reverse osmosis systems.

9.4.10  The reverse osmosis water plant, which is fully operational, supplies backup water to Old Bahama Bay Resort and the homes sited upon its canal lot subdivision, as well as the existing golf course. The plant is in need of re-commissioning. I have been advised that this is a relatively simple procedure. Current water storage is provided by a couple of large water tanks.

9.4.11  The sewage plant is built, but will not be operational until there is a sufficient number of residences constructed to create enough capacity for it to operate. As per the restrictive covenants of the Architectural Guidelines and Master Declaration relating to Covenant, Conditions and Restrictions, residences are required to be serviced by private sewage treatment plant with septic tanks not permitted.

9.4.12  The private airport with customs facilities is complete although only operated by appointment for generally private aircraft and cargo.

9.4.13  The external structures to the three beach clubs are complete.

9.4.14  The Arnold Palmer golf course is almost complete with greens and fairways in place and the course appears to be being maintained. I am advised that the course could likely be open for play within 90 days once a developer commits to finish. Outstanding items include the installation of buggy paths, flags and holes.

9.4.5   In light of the above, I have therefore concluded that there is the ability for residential owners of future dwellings sited upon the Ginn Sur Mer residential lots to connect at least to part of the utilities relatively easily.


9.5     Planning & Other

9.5.1   The Property's Class Code as per the Inland Revenue classification guide is shown to be R1, Low Density Residential

9.5.2   I am unaware of any planning applications or future plans relating to the potential future development of the subject Property. I have assumed that development for a residential use would be permitted.

9.5.3   I am not aware of any particular restrictions on development other than the restrictive covenants filed with the development plan and detailed within the



Master Neighbourhood Declaration relating to Covenant, Conditions and Restrictions and Architectural Guidelines. The Master Neighbourhood Declaration also makes provision for the requirement to maintain common areas, infrastructure, etc. Please refer to Section 9.6.6 for further details on the exceptions to this relating to a settlement made in relation to a class action case.

9.5.4   I have been advised that the Property Owners' Association (POA) has not been set up and Resort Holdings (Bahamas) Ltd are responsible for currently managing the development.

9.5.5   Based upon a review of the survey plats, there do not appear to be any easements, encroachments, or restrictions that would adversely affect value and as such my valuation assumes such.

9.5.6   I have been provided with copies of the Land Registers and upon which I have relied for the purposes of this report. It appears that the Property is not subject to any onerous or unusual covenants which are likely to affect the valuation of the Property with the exception of the subject ongoing litigation.

9.6   <u>Tenure</u>

9.6.1   I am informed that in total #826 (eight hundred and twenty six) lots were formed within the subdivision of the Ginn Sur Mer development and of which #194 (one hundred and ninety four) lots were sold by the original developer during their initial sales period in 2006/8. The subject 31# (thirty one) lots form part of this sale inventory.

9.6.2   The sales details for the subject lots are set out below:-

| #   | Street          | Conveyance Date | Owner           |
|-----|-----------------|-----------------|-----------------|
| 33  | Marin Court     | 28/08/07        | Bredahl         |
| 39  | Marin Court     | 22/12/06        | Bredahl         |
| 42  | Marin Court     | 22/08/07        | Card            |
| 43  | Marin Court     | 3/12/07         | Ponsler         |
| 44  | Marin Court     | 15/03/07        | Ponsler         |
| 46  | Marin Court     | 13/12/06        | Liles           |
| 67  | Marin Court     | 16/02/07        | Bailey          |
| 79  | Marin Court     | 22/12/06        | Verhees         |
| 104 | Marin Court     | 22/01/07        | Cicolani        |
| 108 | Marin Court     | 28/12/06        | Carell          |
| 109 | Marin Court     | 13/12/06        | Maciag          |
| 179 | Marin Court     | 13/04/07        | Lammertse       |
| 189 | Marin Court     | 15/03/07        | Willis          |
| 203 | Jardin Boulevard| 07/08/07        | Van             |
| 208 | Rue de Mer Road | 22/12/06        | Taliaferro      |
| 220 | Rue de Mer Road | 22/01/07        | Taglia          |
| 234 | Rue de Mer Road | 26/02/07        | Byers           |
| 261 | Rue de Mer Road | 16/08/07        | Webb            |
| 270 | Rue de Mer Road | 20/03/07        | Kherkher        |
| 272 | Rue de Mer Road | 23/03/07        | Andrews Group   |
| 281 | Rue de Mer Road | 25/02/08        | Cappuccino      |
| 282 | Rue de Mer Road | 10/08/07        | Cappuccino      |
| 312 | Rue de Mer Road | 13/11/08        | Sell - Carell   |
| 429 | Rue de Mer Road | 28/08/07        | Taglia          |
| 437 | Rue de Mer Road | 15/03/07        | Fresonke Group  |
| 448 | Jardin Boulevard| 28/08/07        | Hoyer           |
| 487 | Jardin Boulevard| 22/05/07        | Domnick         |
| 488 | Jardin Boulevard| 07/08/07        | Jackson Group   |
| 493 | Jardin Boulevard| 13/12/06        | Josephson       |
| 494 | Chenal Court    | 22/01/07        | Sell - Clemmons |
| 498 | Chenal Court    | 15/12/06        | Smith           |



9.6.3    From my research, there appears to be a lack of available information for various historical and more recently reported lot sales. Several legal transfers did not appear to be available when requests were made to obtain copies of these Public records. We are unaware if this is due to an administrative error or some other circumstances.

9.6.4    The selling of further lots at the Ginn Sur Mer development by the original developer was put on hold after September 2008 due to the default on the Credit Suisse loan.

9.6.5    An agreement was reportedly reached where Credit Suisse foreclosed on part of the Ginn Sur Mer development.

9.6.6    I have been supplied with various documents relating to several types of litigation connected to the Ginn Sur Mer development. The first litigation series of cases relates to a title disputes concerning portions of the Ginn Sur Mer site, which has been pending since circa 2006. The second litigation resulted from the Credit Suisse loan default and involved cases being filed beginning December 2008. The most recent litigation involved a class action settlement in 2013 which affected the majority of the lots that were sold during a specific time frame by the original developer of the Ginn sur Mer development (excluding the subject lots).

9.6.7    It is my opinion, given the litigation that is ongoing with regard to the subject property (#31 lots), that any party looking to purchase a lot within the Ginn Sur Mer development would be cautious in taking on the ownership of a property where there is current litigation. This would in my opinion have a negative impact upon the value of the subject lots at the current time, and has been incorporated into my valuation opinion.

9.7.8    I have been advised that the Property is not subject to any onerous or unusual covenants which are likely to affect the valuation of the subject Property, with the exception of the current litigation.

9.7.9    Replats Subdivision Plans are attached at **Appendix 5** showing my understanding of the property edged red.



**SECTION C – MY OPINION**

**10.    VALUATION CONSIDERATIONS**

10.1    In my opinion, there is a market for the sale of lots to potential purchasers within Ginn Sur Mer, although given the current status of the development, and the uncertainty surrounding it, including the ongoing litigation relating to the subject Property, it is likely that any prudent purchaser will want to receive a discount to reflect the risk and uncertainly attached to the development as it currently stands.

10.2    The subject lots form part of the Ginn sur Mer development, part of which was subject to a Foreclosure Judgement in December 2009 for the amount of $495 million in favour of Credit Suisse. Little if any additional improvement works have been undertaken by the new developer (Resort Holdings (Bahamas) Ltd) since that time.

10.3    Considerable expenditure was incurred to get the development up to its current level of infrastructure, amenities and services, and although falling short of the intended list of amenities and services envisioned by the original developer (Club House, wave pool, restaurants, marina, golf course etc.), the subject lots are generally able to be serviced and accessed by the subdivision roads (and potentially boat for the canal lots). The majority of the subject lots benefit from water frontage (ocean or canal) or front onto the golf course. There are in addition existing facilities located close by in the adjacent Old Bahama Bay Resort, including a restaurant/ bar, shop and marina facility for guests as well as the West End settlement, which means that the Ginn Sur Mer development is not completely isolated and has access to some amenities and services in the general vicinity.

10.4    Although the future status of the development remains uncertain, the development and its lots are strategically placed, with the adjacent Old Bahama Bay Marina forming the nearest Port of Entry to Florida which lies just 55 miles to the west. The area is popular with boaters travelling from Florida particularly during the weekends.

10.5    I have been advised that lot owners can connect relatively easily to existing services, although some of the functions such as the sewage treatment and water will only be able to operate once a certain level of occupancy is achieved. As such, any lot owners looking to develop out their lots will need to install their own reverse osmosis and waste water treatment plants until such time as there is sufficient capacity to operate the equipment. Further minor works to connect the power up is also required and after such time power will be available to the lots within the development.

10.6    I am unaware of the current strategy of the existing developer (Resort Holdings (Bahamas) Ltd) or any potential new party which may be looking to invest in the project. I have assumed that in the short term there is no reasonable expectation that the development in its previously proposed format or some other significant redesign will be completed given the scale of the development and the still ongoing uncertainty regarding the economic conditions for tourism related development in Grand Bahama, the Bahamas and Caribbean wide, for this scale of project.

31# Lots in Ginn Sur Mer Development, West End, Grand Bahama, The Commonwealth of The Bahamas



10.7    Six houses were partially complete at the date of my inspection, with three of them under active construction. This suggests that there is some level of confidence in the development after several years when no construction was being undertaken.

10.8    Various lots have been sold over the last few years, but market values are lower than at the time of the original lot purchase due to the overall economic downturn, with real estate levels yet to recover significantly apart from a very limited number of market segments in the Caribbean.

10.9    The existing developer of Ginn Sur Mer does not appear to have an onsite office and there would appear to be little if any active marketing being undertaken with regard to disposing of the remaining unsold lot inventory. We are aware that various sales were undertaken in the last few years by them, although the 19# lots which were sold in less than a month in 2013 suggests that there was an appetite for the product and the lots were listed at a discounted price. The developer was reportedly motivated to sell the lots to assist in paying various taxes due to the Government. The subsequent proposed sale of 20# further lots in 2015 was reportedly not consented to by the Government, which wants the developer to focus on a large scale solution to the development and not sell it off on an ad hoc lot basis.

10.10   There are various lots which are currently on the market for resale by existing lot owners but generally many of them appear to be listed above my opinion of market value and reflect a considerable range in values. As such, it suggests that these owners are not motivated to sell and have placed their lots on the market to test the market. After discussions with various listing agents, there appeared to be limited interest in many of the lots largely due to the prices the owners are seeking to achieve as well as the uncertainty regarding the development.


## 11.   VALUATION APPROACH

11.1    Valuers generally consider three main approaches to valuation when assessing the market value of a property. These include the cost approach, sales comparison approach, and income capitalisation approach.

11.2    With regard to the subject Property, I consider the sales comparison approach to be the most reliable method due to the state of the Property, including the infrastructure/ services improvements which serve each of the lots. Vacant land is typically valued on the basis of comparing sales and listings of land parcels which have similar characteristics. This approach directly considers the prices of alternative properties with similar characteristics to the subject Property which forms part of a master planned community.

11.3    I do not consider the income approach to be a suitable method to value the subject Property as the undeveloped land is held in fee simple title and does not have an income stream which can be capitalised to form a value. Investors therefore in fee simple residential land lots do not typically consider income as a motivation for purchase/ investment.

11.4    Due to the generally undeveloped nature of the individual lots which form the subject Property, I do not consider the cost approach to be a suitable method of valuation as there are no significant building or site improvements which add



value to the underlying land (with the exception of the infrastructure/ service improvements which service the lots).

11.5    Suitable allowance/ adjustment is required to be made to reflect the location, size, zoning, configuration, prominence and frontage onto ocean/ canal/ golf course, views afforded, utilities provided and so forth when relying on the comparable sales approach for the land. With regard to the subject lots within Ginn Sur Mer, we have also given consideration to the uncertainty regarding the short term/ medium term progress of the development or the direction the long term development will have in comparison to its original master plan. To an extent, this will be dependent on the general real estate market in Grand Bahamas and wider afield as well as the motivation and financing of the existing or potential future development team.

11.6    There does appear to be various sales that have been undertaken within the development over the last several years, although many of these sales are now a couple of years old and access to these sales details appears to be somewhat limited as various sales of these lots appear to not have been registered or were not readily available from the computerised search system.

11.7    Given the level of available sales undertaken in the Ginn Sur Mer development and the neighbouring Old Bahama Bay residential lot subdivision, it is in my opinion most appropriate to rely upon sales undertaken in the immediate and adjacent development and not wider afield given the subjective nature of any adjustments which must be made to reflect the different locational, access, services and amenity characteristics when compared to the subject lots, particularly given the subject lots' association to a large scale development.

11.8    Given the current level of investment undertaken in the Ginn Sur Mer, in my opinion it is likely that some form of future development of the development will proceed and it is that potential that will continue to assist in selling lots for either speculation or by parties who will look to develop out the lots in the medium to long term. In addition, there are various existing lot owners who have invested in the development who will not want to dispose of their lots at a loss and will adopt a wait and hold strategy or invest further into the development to assist in stimulating its development once again.

11.9    Sales levels in my opinion have been somewhat hampered due to the limited marketing campaign which has been recently undertaken by the current developer.

11.10   I have been advised that of 20# (twenty) lots available to purchase in 2013 by the developer within the Parcel 26 Gin Sur Mer development, 19# sold in less than a month which suggests that there was demand for the product and the sales prices were reflective of the seller's motivation, which would support a lower sales value being achieved particularly given the level of sales achieved in a short period. Further circa 20# (twenty) lots were intended to be sold in 2015, although the Government reportedly did not consent to the sales for the reasons previously discussed. The 2013 lots sales, other ad hoc sales in the neighbouring Old Bahama Bay development, and the intended sales in 2015 does establish and identify that there is reasonable demand for lots within the development.

11.11   The lots which form the subject Property were purchased at varying points in time by the respective owners as detailed in Section 9.6.2.



11.12   I have referenced the most pertinent comparable evidence available below for the subject lots for use within the Sales Comparison Approach to property valuation, giving most weight to completed transactions. I have disregarded many of the current resale listings which appear to be speculative in nature and out of sync with the current market. All the comparables are located within relatively close proximity to the subject Property within either the Ginn Sur Mer or the adjoining Old Bahama Bay and Pine Island subdivisions.

11.13   With regard to the most relevant comparable evidence, I set out below the most recent sales and several current listings. I have not included the various current listings which are the higher end of the range as they appear to be well in excess of the current market tone. The comparable properties include the following:-

| Instrument | Sale Date | Grantor | Grantee | Subdivision | # | Price | Acres | Sq.ft. | Price/SF |
|---|---|---|---|---|---|---|---|---|---|
| Awaited | U/O 2015 | Resort Holdings (Bahamas) Ltd | Awaited | GSM | 20 no. | Awaited | Circa 0.17 | Awaited | Awaited |
| Awaited | 2014/5 | Awaited | Awaited | OBB | Awaited | $250,000 | Awaited | Awaited | Awaited |
| Awaited | 2014/5 | Awaited | Unknown | OBB | 60 | $200,000 | 0.41 | 17,859 | $11.16 |
| 273145 | 3/19/14 | West End Resort Ltd | The Holdings Ltd | OBB | 11A | $250,000 | 0.57 | 24,847 | $10.06 |
| 261815 | 2/11/2014 | Resort Holdings (Bahamas) Ltd | Lot 313 LLC | GSM | 313 | $200,000 | 0.46 | 20,000 | $10.00 |
| 260028 | 12/03/2013 | Resort Holdings (Bahamas) Ltd | MHH Properties | GSM | 248 & 252 | $400,000 | 0.34 | 14,810 | $27.01 |
| 260174 | 12/19/2013 | Resort Holdings (Bahamas) Ltd | BLJ Ltd | GSM | 213 | $200,000 | 0.17 | 7,405 | $27.01 |
| 258512 | 11/14/2013 | Resort Holdings (Bahamas) Ltd | Thomas Croley | GSM | 230 | $200,000 | 0.17 | 7,400 | $27.03 |
| 258507 | 11/1/2013 | Resort Holdings (Bahamas) Ltd | John Van Stone | GSM | 260 | $200,000 | 0.18 | 7,880 | $25.38 |
| 258511 | 10/3/2013 | Resort Holdings (Bahamas) Ltd | Kargus Co Ltd | GSM | 82 & 83 | $400,000 | 0.39 | 17,160 | $23.31 |
| Awaited | Oct 13 | Awaited | Awaited | GSM | 69 | $200,000 | 0.21 | 9,147 | $21.86 |
| Awaited | Oct 13 | Awaited | Awaited | GSM | 111 | $200,000 | 0.20 | 8,712 | $22.95 |
| Awaited | Oct 13 | Awaited | Awaited | GSM | 142 | $200,000 | 0.22 | 9,582 | $20.87 |
| Awaited | Oct 13 | Awaited | Awaited | GSM | 214 | $200,000 | 0.17 | 7,405 | $27.00 |
| Awaited | Oct 13 | Awaited | Awaited | GSM | 247 | $180,000 | 0.17 | 7,405 | $24.30 |
| 263140 | 9/19/2013 | Resorts Holding (Bahamas) Ltd | Ruggiero | GSM | 243/44 | $400,000 | 0.35 | 15,400 | $25.97 |
| 258502 | 8/22/2013 | Resorts Holding (Bahamas) Ltd | Diga Enterprises | GSM | 256 | $200,000 | 0.17 | 7,600 | $26.32 |
| N/a | N/a | Current Resale Listing - Golf | N/a | GSM | 486 | $675,000 | 0.18 | 8,025 | $84.11 |
| N/a | N/a | Current Resale Listing - Ocean | N/a | GSM | 97 | $850,000 | 0.20 | 8,712 | $97.56 |
| N/a | N/a | Current Listings | N/a | OBB | Various | $299,000 - $700,000 | 0.29 - 0.37 | 12,979 - 6,467 | $30.30 - $44.60 |

11.14   To the best of my knowledge there have been no sales of any of the subject lots within the three years preceding this report, nor are there any current listings for sale or contracts for sale of the subject lots.



11.15    Of the currently available confirmed sales transactions, the most recent confirmed ocean front lot sales that I have been able to confirm currently occurred in 2013/4. Despite there being various listings with a vast range reported for resale listings (which generally appear to be in excess of current market levels) I do not currently have any confirmed sales that occurred within the last couple of years for oceanfront lots. Prior to 2014, the ocean front lots averaged $200,000 per lot which equates to circa $26 per square foot. The 2014 sale transaction in Ginn Sur Mer which I have confirmation of achieved $200,000, although it was for a considerably larger lot than the 2013 sales which resulted in a price of about $10.00 per square foot, which appears to be out of sync with the levels achieved several months earlier despite there not having being reported any significant changes in the development's status or a worsening of market conditions. The ongoing class action litigation was also generally known in the market place at the time of this sale. As such I have applied caution when relying upon this on a per sq. ft. basis given the level of activity evidenced by the 2013 sales.

11.16    The most recent confirmed canal-front sales in the subject Ginn Sur development and adjoining Old Bahama Bay development were $200,000, which is higher than the historical sales reported in between 2010 and 2012 when sales levels of $160,000, $185,000 and $182,000 were achieved which reflects a rates of between $10.89 and $13.74 per square foot. There have been a number of other more recent sales in 2014/5 although these sales have yet to be confirmed but reportedly reflect a range of $200,000 - $250,000 although a couple of these sales are for lots which are larger in size than the typical lot size.

11.17    I am not aware of any sales of lots that have neither ocean frontage nor canal frontage since circa 2007.

11.18    The recent lack of sales data does not suggest a lack of demand. Rather, #20 contracted sales in 2015 did not close reportedly because the Government did not consent. The apparent high list prices being sought by existing purchasers for resale and the lack of marketing by the developer to sell their lots (likely resulting in part from their inability to potentially get consent from the Government) has in my opinion resulted in the lack of completed sales transactions. Generally, Grand Bahama's real estate market has been slow since the end of 2008 with certain resort developments, including the subject development, stopped. Generally, in the last couple of years, the market appears to have improved somewhat with the historical sales in 2013 at the subject development, perhaps suggesting improved market conditions at Ginn Sur Mer, and various segments of the local and wider market. This suggests that there should be an improvement in level of sales subject to there remaining a relatively stable and realistically priced supply of real estate inventory.

11.19    I did speak to several real estate agents regarding the general market and in particular the Ginn Sur Mer and Old Bahamas Bay subdivisions. Generally it was considered that the market remains depressed due to the uncertainty regarding Ginn Sur Mer, and as and when some progress is made, it is expected that demand and price escalation for the real estate inventory will likely increase significantly.

11.20    In light of the above sales comparables, there would appear to be potential purchasers ready to invest in the Ginn Sur Mer development and surrounding development as supported by the recent sales in the adjacent Old Bahamas Bay development, subject to the lots being realistically priced and a proper marketing campaign being undertaken.



11.21   If all of the subject lots were put on the market at the present time, the lots would need to be listed at levels similar to those achieved in the 2013 sale as this forms the most recent direct comparable for the subject lots.

11.22   Based upon my valuation consideration and comparable information available, I am of the opinion that the value for the subject Property would be approximately $22.50 - $24 per square foot for the oceanfront lots depending on their size; $10 - $18 per square foot for typical canal front lots depending on their size, and $10 per square foot for those facing the golf course or inland land. Lot 437 is an exception to the above as it is forms a canal lot which is significantly larger which I discounted to a value of $10 per square foot.

## SECTION D – MY CONCLUSIONS AND DECLARATION

## 12.   CONCLUSIONS

12.1   It is my opinion to a reasonable degree of certainty that the Market Value of the Property as at the date of valuation is 12th May 2016 (the "**Date of Inspection'**) on the assumption of a 12 - 18 month marketing period is as follows:-

| # Street | Size SF | Size Acres | Value | Sq.ft | Rounded |
|---|---|---|---|---|---|
| 33 Marin Court | 8,379 | 0.19 | $192,717 | $23 | $190,000 |
| 39  Marin Court | 8,748 | 0.2 | $196,830 | $23 | $195,000 |
| 42 Marin Court | 8,933 | 0.21 | $200,992 | $22 | $200,000 |
| 43 Marin Court | 8,954 | 0.21 | $201,465 | $23 | $200,000 |
| 44 Marin Court | 8,916 | 0.2 | $200,610 | $23 | $200,000 |
| 46 Marin Court | 8,840 | 0.2 | $198,900 | $23 | $200,000 |
| 67 Marin Court | 9,040 | 0.21 | $203,400 | $23 | $200,000 |
| 79 Marin Court | 8,715 | 0.20 | $196,087 | $22 | $195,000 |
| 104 Marlin Court | 7,964 | 0.18 | $191,136 | $24 | $190,000 |
| 108 Marin Court | 8,321 | 0.19 | $191,138 | $23 | $190,000 |
| 109 Marin Court | 8,410 | 0.19 | $193,430 | $23 | $195,000 |
| 179 Marin Court | 9,491 | 0.22 | $142,365 | $15 | $140,000 |
| 189 Marin Court | 5,600 | 0.13 | $100,800 | $18 | $100,800 |
| 203 Jardin Boulevard | 8,581 | 0.20 | $85,810 | $10 | $85,000 |
| 208 Rue de Mer Rd | 7,400 | 0.17 | $177,600 | $24 | $180,000 |
| 220 Rue de Mer Rd | 8,053 | 0.18 | $193,272 | $24 | $195,000 |
| 234 Rue de Mer Rd | 7,400 | 0.17 | $177,600 | $24 | $180,000 |
| 261 Rue de Mer Rd | 8,331 | 0.19 | $191,613 | $23 | $190,000 |
| 270 Rue de Mer Rd | 7,714 | 0.18 | $185,136 | $24 | $185,000 |
| 272 Rue de Mer Rd | 7,400 | 0.17 | $177,600 | $24 | $180,000 |
| 281 Rue de Mer Rd | 7,400 | 0.17 | $177,600 | $24 | $180,000 |
| 282 Rue de Mer Rd | 7,400 | 0.17 | $177,600 | $24 | $180,000 |
| 312 Rue de Mer Rd | 7,720 | 0.18 | $185,280 | $24 | $185,000 |
| 429 Rue de Mer Rd | 9,728 | 0.22 | $145,920 | $15 | $145,000 |
| 437 Rue de Mer Rd | 16,757 | 0.38 | $167,570 | $10 | $170,000 |
| 448 Jardin Boulevard | 8,854 | 0.2 | $88,540 | $10 | $90,000 |
| 487 Jardin Boulevard | 8,025 | 0.18 | $80,250 | $10 | $80,000 |
| 488 Jardin Boulevard | 8,025 | 0.18 | $80,250 | $10 | $80,000 |
| 493 Jardin Boulevard | 8,318 | 0.19 | $83,180 | $10 | $85,000 |
| 494 Chenal Court | 10,365 | 0.24 | $155,475 | $15 | $155,000 |
| 498 Chenal Court | 8,242 | 0.19 | $123,630 | $15 | $125,000 |

12.3   Valuation is not an exact science and I would accept that another reasonable valuer could quite properly arrive at a different value to me.



12.4    I would consider a difference of 10% to be well within the tolerance of accuracy of an exercise of this nature. Before accepting any figure outside such a range I would wish to consider both the other valuer's comparables and their approach.

13.   **DECLARATION**

13.1    I confirm that I understand that my duty to the court as an expert witness overrides any duty to those instructing or paying me and that I have complied with that duty and will continue to do so in giving my evidence impartially and objectively as required.

13.2    I confirm that my report includes all facts which I regard as being relevant to the opinions which I have expressed and that attention has been drawn to any matter which would affect the validity of those opinions.

13.3    My report includes or reflects all relevant facts of which I am aware.  Where I have made specific or important assumptions these are set out or included as an appendix.   If there are material matters of which I am unaware or if the assumptions are incorrect or inappropriate for any reason of which I am currently unaware it could have a material effect upon my stated opinion.

13.4    I confirm that I am not instructed under any conditional fee arrangement nor have I entered into any agreement by way of funding this litigation either directly or indirectly.

13.5    Conflicts of interest:

13.5.1   I am not aware of any conflicts of interest of any kind other than those already disclosed in my report.

13.5.2   I do not consider that any of the matters set out affect my suitability to act as an expert in this matter.

13.5.3   I undertake to advise those instructing me if, between the date of this report and the trial, there is any change in circumstances which will impact on this declaration.

13.6    It is my intention and belief that the contents of this report should comply with the requirements of the:

- Royal Institution of Chartered Surveyors – "Surveyors acting as expert witnesses" RICS Practice Statement.

- Part 35, and relevant amendments of the CPR.

- Code of Guidance On Expert Evidence prepared by the Expert Witness Institute dated December 2001.

- CPR Code of Guidance for Experts and those instructing them prepared by the Academy of Experts dated July 2004.

- Protocol for the Instruction of Experts to give Evidence in Civil Claims.

31# Lots in Ginn Sur Mer Development, West End, Grand Bahama, The Commonwealth of The Bahamas



14.  **FEE**

I confirm that a fee based on a time charge basis at a rate of US$250 per hour has been agreed as compensation for the preparation of the Valuation Report.

15.  **STATEMENT OF TRUTH**

15.1  I confirm that insofar as the facts stated in my report are within my own knowledge I have made clear which they are and I believe them to be true, and that the opinions I have expressed represent my true and complete professional opinion to a reasonable degree of professional certainty.

Signed

**ROSEMARY NICHOLLS MRICS**
**ASSOCIATE DIRECTOR**

Dated   19th June 2016

31# Lots in Ginn Sur Mer Development, West End, Grand Bahama, The Commonwealth of The Bahamas